IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

|  |  |
|---|---|
| KEVIN O., <br><br>                    Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security, <br><br>                    Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING ALJ DECISION** <br><br> Case No. 1:25-cv-00006-CMR <br><br> Chief Magistrate Judge Cecilia M. Romero |

All parties in this case have consented to the undersigned conducting all proceedings (ECF 10). 28 U.S.C. § 636(c). Plaintiff Kevin O. (Plaintiff), pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security (Commissioner or Defendant) denying his claim for disability insurance benefits (DIB) and supplemental social security income (SSI) under Titles II and XVI of the Social Security Act (Act). After careful review of the record (Certified Administrative Record (Tr.), ECF 12), and the parties' briefs: Plaintiff's Motion for Review of Agency Action (Pl. Br.) (ECF 13); Defendant's Response (Def. Br.) (ECF 19); and Plaintiff's Reply (Pl. Rep.) (ECF 21), the court concludes that the Commissioner's decision is supported by substantial evidence and free from reversible error. For the reasons discussed below, the court hereby DENIES Plaintiff's Motion for Review of Agency Action (ECF 13) and AFFIRMS the decision of the Commissioner.

## I.    BACKGROUND

Plaintiff was 41 years old on his disability onset date of June 1, 2017 (Tr. 33). Plaintiff filed an application for DIB and SSI in September 2021, alleging disability due to bipolar disorder,

1

chronic obstructive pulmonary disease (COPD), attention deficit disorder (ADHD), depression, and sleep apnea (Tr. 252).

The ALJ followed the Commissioner's five-step sequential evaluation process for disability claims (Tr. at 10–25). *See* 20 C.F.R. § 404.1520(a)(4). In a decision dated December 12, 2023, the ALJ determined at step two that Plaintiff had severe impairments of opioid dependence, stimulant polysubstance abuse, bipolar disorder, anxiety disorder, schizoaffective disorder, ADHD, sleep apnea, and pulmonary hypertension (Tr. 13). The ALJ further found that Plaintiff had the following non-severe impairments: COPD, a mild degenerative joint disease of the left knee, and mild dorsal soft tissue swelling of the right foot (*id.*)

At step three, the ALJ considered Plaintiff's physical impairments under the following listings and found that the criteria for each were not met: pulmonary hypertension under Listing 4.02 and sleep apnea under Listing 3.00 (Tr. 14). The ALJ also considered Plaintiff's mental impairments under Listings 12.03, 12.04, 12.06, and 12.11, finding that the criteria for each were not met (Tr. 14–15), but found mild limitations in adapting or managing oneself (*id.* at 17), moderate limitations in interacting with others and concentrating, persisting, or maintaining pace (*id.* 15); and no limitation in understanding, remembering, or applying information (*id.*).

The ALJ next determined Plaintiff had the residual functional capacity (RFC) to perform the full exertional range of medium work, as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), "except he can understand, remember, and carry out more than simple but less than complex tasks that can be learned and mastered in up to six months' time or less" (Tr. 17). The ALJ also provided the following RFC limitations:

> He can work in proximity to others, tolerating occasional interaction with supervisors and coworkers but with no tandem job tasks requiring cooperation with other workers to complete the task. Work should not involve direct contact with the general public. He can tolerate brief, incidental contact with the general

2

public. At such levels, he can maintain concentration, persistence, and pace throughout a normal workday and workweek, make routine work-related decisions, plan and set goals, adapt to routine workplace changes, travel, and recognize and avoid ordinary workplace hazards.

(*id*).

At step four, the ALJ found that Plaintiff is unable to perform past relevant work as a Convenience Store Manager (Department of Occupational Titles (DOT) § 185.167-014), Safety Inspector (DOT § 806.364-010), and Building Maintenance (DOT § 899.381-010) (Tr. 23). In addition to past relevant work and consistent with the vocational expert's (VE) testimony, the ALJ found at step five that Plaintiff could perform jobs existing in significant numbers in the national economy, including: Kitchen Helper (DOT § 318.687-010), Hand Packager (DOT § 920.587-018), and Auto Detailer (DOT § 915.687-034) (Tr. 24).

After the hearing, Plaintiff submitted a post-hearing brief challenging the VE's testimony and alleging conflicts with the DOT and other vocational evidence (Pl. Br. at 11; Tr. 348–364). Plaintiff raised issues about the consistency of the VE's testimony with the DOT, including concerns about coworker and supervisor interaction, educational requirements, and other job aspects (Pl. Br. at 11; Tr. 348–364). The ALJ acknowledged and addressed these arguments, rejecting Plaintiff's objections as unpersuasive and relying on the VE's testimony (Tr. 24). The ALJ therefore concluded that Plaintiff was not disabled and denied benefits (*id*. at 26). The ALJ's decision became the Commissioner's final decision when the agency's Appeals Council denied the request for review. *See* 20 C.F.R. § § 404.981. The court has jurisdiction under 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

"On judicial review, an ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting 42 U.S.C. §

405(g)).  The substantial evidence threshold "is not high," and "defers to the presiding ALJ, who has seen the hearing up close."  *Id.* at 103, 108.  Substantial evidence is "more than a mere scintilla" and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Under this deferential standard, the court may neither reweigh the evidence nor substitute its judgment for that of the ALJ.  *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).  If the evidence is susceptible to multiple interpretations, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## III.    DISCUSSION

On appeal, Plaintiff asserts four primary errors in the ALJ's decision: (1) failure to comply with Social Security Ruling (SSR) 00-4p by relying on vocational testimony conflicting with the DOT without resolving the conflict; (2) lack of substantial evidence due to inclusion of less-than-full-time jobs without reconciliation; (3) inconsistency between vocational testimony and Plaintiff's RFC unaddressed by the ALJ; and (4) inadequate evaluation of all impairments and their impact on work ability (Pl. Br. at 2–3). For the reasons set forth below, the court concludes that Plaintiff's arguments do not establish reversible error in the ALJ's decision.

### A.  The ALJ Complied with SSR 00-4p.

At step five, the burden shifts to the ALJ to determine whether the claimant has the RFC "to perform other work in the national economy in view of his age, education, and work experience." *Williams*, 844 F.2d at 751 (quoting *Bowen v. Yuckert,* 107 S.Ct. 2287, 2291 (1987)).

4

This burden can be met in one of two ways: 1) by the testimony of a VE, or 2) by reference to the grids. *Daniels v. Apfel*, 154 F. 3d 1129, 1132 (10th Cir. 1998).

Here, a VE testified that Plaintiff could perform jobs existing in significant numbers in the national economy, including Kitchen Helper, Hand Packager, and Auto Detailer (Tr. 24). The ALJ indicated that the VE cited the publications relied upon in forming her opinions and that the agency takes administrative notice of such sources as reliable job information (*id*.). The ALJ further observed that the VE testified that the identified jobs did not require a high school education and emphasized that the VE has professional knowledge and experience in job placement (*id*.). Based on this, the ALJ concluded that there was no evidence demonstrating that the VE's testimony was unreliable or inaccurate (*id*.). The ALJ relied on the VE's testimony in finding at step five that there was a significant number of jobs in the national economy that Plaintiff could perform(*id*.).

Plaintiff contends that the ALJ did not comply with SSR 00-4p because the ALJ relied on vocational witness testimony without first resolving alleged conflicts or inconsistencies in that testimony (Pl. Br. at 5–11).

i.    *The ALJ's Duty Under SSR 00-4p*

SSR 00-4p governs the use of VE testimony and imposes an affirmative duty on the ALJ to identify and resolve conflicts between such testimony and the DOT SSR 00-4p, 2000 WL 1898704, at *1.[1] As relevant here, SSR 00-4p provides that, before relying on VE evidence, an

---

[1] SSR 00-4p was rescinded and replaced by SSR 24-3p, effective January 6, 2025. SSR 24-3p can be accessed online at: https://www.ssa.gov/OP_Home/rulings/di/02/SSR2000-04-di-02.html. SSR 24-3p provides updated guidance on using vocational evidence. SSR 24-3p, however, expressly provides that courts should review final agency decisions under the rules in effect at the time the decision was issued. SSR 24-3p ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). Because the ALJ's decision was issued before SSR 24-3p's effective date, the court evaluates Plaintiff's argument under SSR 00-4p, the governing authority at that time. *Lequante H. v. Colvin*, No. 2:23-CV-00924, 2025 WL 319565, at *3 (D. Utah Jan. 8, 2025) ("[A] reviewing court should apply SSR 00-4p if it remained in effect at the time of the ALJ's decision[.]"), report and recommendation adopted sub nom. *Lequante H. v. King*, No. 2:23CV00924-DAK-DAO, 2025 WL 315889 (D. Utah Jan. 28, 2025).

ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs… and information in the [DOT]… and [e]xplain in the determination or decision how any conflict that has been identified was resolved." *Id*.

The ruling further makes clear that the SSA relies "primarily on the DOT (including its companion publication, the [Selected Characteristics of Occupations] SCO) for information about the requirements of work in the national economy," and that "[o]ccupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT." *Id*. at *2. SSR 00-4p provides that "[w]hen there is an apparent unresolved conflict between VE . . . evidence *and the DOT*, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence." *Id*. (emphasis added).

Finally, SSR 00-4p requires that any such conflict be resolved and explained in the decision itself. The ruling states that "[w]hen vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE . . . evidence," and must "explain in the determination or decision how he or she resolved the conflict . . . irrespective of how the conflict was identified." *Id.* Thus, SSR 00-4p imposes a clear duty on the ALJ to identify, investigate, and explain any conflict between VE testimony and the DOT before relying on that testimony in making a disability determination.

a.   <u>SSR 00-4p requires the ALJ to resolve conflicts between VE testimony and the DOT, not other sources of occupational data.</u>

In support of several of his arguments, Plaintiff relies on information from sources such as the Department of Labor's Occupational Information Network (O*Net) and the Bureau of Labor Statistics (BLS) (*see* Pl. Br. at 5–11; Pl. Rep. at 3–7). Plaintiff contends that data from these sources creates conflicts with the VE's testimony that the ALJ was required to identify and resolve under SSR 00-4p (*see id*.).

Specifically, Plaintiff relies on data from these sources to argue that the position of Hand Packager conflicts with Plaintiff's limitation regarding his ability to interact with data (Pl. Br. at 6); that the positions of Hand Packager and Kitchen Helper require face-to-face interaction inconsistent with Plaintiff's limitation to occasional interaction with supervisors and coworkers and incidental contact with the public (*id.*); and that the positions of Hand Packager, Kitchen Helper, and Auto Detailer conflict with Plaintiff's level of education (*id.* at 10).

Even assuming these sources identify inconsistencies with the VE's testimony, SSR 00-4p only requires the ALJ to resolve conflicts between VE testimony and the DOT. SSR 00-4p, 2000 WL 1898704, at *2; *see also*, *Poppa v. Astrue*, 569 F.3d 1167, 1173–74 (10th Cir. 2009) (explaining the ALJ must resolve conflicts between a VE's testimony and the DOT). While Plaintiff raises concerns about the accuracy of DOT data (and the SSA has since addressed such concerns by rescinding SSR 00-4p), Plaintiff cites no authority requiring an ALJ to resolve conflicts between VE testimony and these other sources. Without such authority, the court cannot conclude the ALJ had to address alleged inconsistencies outside the DOT. Accordingly, the court is not persuaded by Plaintiff's arguments based on conflicts with sources other than the DOT.

> ii.    *Plaintiff's contentions with the VE's testimony and the DOT*

The court now addresses only those arguments in which Plaintiff asserts conflicts between the VE's testimony and the DOT.

> a.    <u>The VE's testimony does not conflict with Plaintiff's limitation regarding his ability to interact with data.</u>

Plaintiff argues that the VE's testimony conflicts with the DOT because the Hand Packager position (DOT § 920.587-018) allegedly requires a level of data processing that exceeds Plaintiff's RFC (Pl. Br. at 6–7). In support, Plaintiff contends that, under Appendix B of the DOT, the job requires a level 5 data function, defined as copying or transcribing data, which Plaintiff argues is

inconsistent with the ALJ's limitation to less than complex tasks (Pl. Br. at 6–7).

Defendant responds that no conflict exists between the VE's testimony and the DOT with respect to the data requirements of the Hand Packager position, and the court agrees (Def. Br. at 6–7). Defendant argues that Plaintiff provides no authority for the assertion that an individual limited to simple or less than complex tasks cannot perform the data functions identified in the DOT (Def. Br. at 6–7).

As Defendant explains, Appendix B of the DOT identifies the fourth digit of a job code as corresponding to "data" and establishes that the lowest levels of data functioning are level 6, defined as "comparing," and level 5, defined as "copying" (Def. Br. at 6–7 (citing DOT, App. B)). The hand packager position has a data level of 5, while the other identified jobs have a data level of 6, representing the lowest levels of data functioning (*id*.). Defendant further notes that, for each of these jobs, the extent of data involvement is listed as "Not Significant" in the DOT (*id*. (citing DOT §§ 318.687-010, 920.587-018, 915.687-034)).

The record does not support Plaintiff's claim that the data requirements for these jobs exceed his RFC. The ALJ reasonably found that the minimal data functions identified in the DOT are consistent with Plaintiff's limitations.

      b.  <u>The VE's testimony does not conflict with Plaintiff's limitation regarding his ability to interact with others.</u>

Plaintiff contends that the VE's testimony is inconsistent with the RFC limitation to occasional interaction with coworkers and supervisors and incidental contact with the public, suggesting a related inconsistency with the DOT (Pl. Br. at 7–10). Defendant responds that no conflict exists between the VE's testimony, the RFC, or the DOT with respect to Plaintiff's social interaction limitations, and the court agrees (Def. Br. at 8). Defendant argues that none of the jobs identified by the ALJ requires contact with the general public and that, under Appendix B of the

DOT, all three jobs are rated at the lowest level of interaction with people, with the extent of interaction listed as "Not Significant" (Def. Br. at 8 (citing DOT §§ 318.687-010, 920.587-018, 915.687-034; DOT, App. B)).

Defendant further notes that the job descriptions for these positions involve primarily task-based duties, such as cleaning, packaging, assembling, and maintaining work areas, and do not indicate that significant social interaction is required (*id*. (citing DOT §§ 318.687-010, 920.587-018, 915.687-034)). Accordingly, the court finds that Plaintiff's assertion of a conflict is unsupported and does not demonstrate any inconsistency between the VE's testimony, the RFC, or the DOT.[2]

Therefore, for the reasons stated above, the court finds that the ALJ complied with SSR 00-004p.[3]

## B. Plaintiff Fails to Demonstrate Any Conflict or Reversible Error Based on the VE's Testimony Regarding Full-Time Work.

Plaintiff next argues that the VE's job numbers are unreliable because they are based on a definition of full-time work that differs from SSA's definition (Pl. Br. at 11–12). Plaintiff notes that SSA defines full-time work as 40 hours per week, while SkillTRAN, the source used by the VE, defines full-time work as approximately 35 to 36 hours per week (Pl. Br. at 11 (citing Tr. 95,

---

[2] The court does not address Plaintiff's argument regarding alleged conflicts between the VE's testimony and Plaintiff's educational limitations because that argument does not identify a conflict with the DOT, but instead relies on data from other sources such as O*Net (Pl. Br. at 10–11; Tr. 352, 357, 361). Because SSR 00-4p governs conflicts between VE testimony and the DOT, and Plaintiff's argument is based on information outside of the DOT, it does not implicate the requirements of SSR 00-4p.

[3] The court further notes that even if it had found error with the ALJ's compliance with SSR 00-4p, SSR 24-3p is applied on remand, not SSR 00-4p. SSR 24-3p at n.1 ("[i]f a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of this SSR, we will apply this SSR to the *entire* period at issue in the decision we make after the court's remand."). Because SSR 24-3p applies on remand and no longer requires the ALJ to resolve conflicts as Plaintiff challenges, courts have found that an ALJ's failure in applying SSR 00-4p would be harmless. *See e.g.*, *Wymer v. Bisignago*, No. 24-CV-258-WMC, 2026 WL 481783, at *6 (W.D. Wis. Feb. 20, 2026); *Colleen F.W. v. Comm'r of Soc. Sec.*, No. 23-cv-493, 2025 WL 837815, at *8 (N.D. Ind. Mar. 18, 2025).

362)). Plaintiff further asserts that the VE was unaware of SSA's definition of full-time work, and therefore, the ALJ could not rely on this testimony because the job numbers were not reliable (Pl. Br. at 11–12).

Plaintiff's argument suffers from multiple deficiencies. First, Plaintiff asserts that SSA defines full-time work as "40 hours a week" (Pl. Br. at 11 (citing SSR 96-8p)), but as Defendant correctly notes, SSR 96-8p defines work on a "regular and continuing basis" as work performed "8 hours a day, for 5 days a week, or an equivalent work schedule" (Def. Br. at 9 (citing SSR 96-8p, 1996 WL 374184, at *2)). SkillTRAN's definition of full-time work as approximately 35 to 36 hours per week does not, without more, conflict with SSA's definition, which expressly allows for an "equivalent" work schedule. Plaintiff does not provide a developed argument explaining how the difference in definitions affects the reliability of the VE's job numbers or the ALJ's decision. As Defendant notes, merely identifying a discrepancy without analysis is insufficient to establish reversible error.

### C.  Plaintiff Does Not Establish Error Based on the VE's Reliance on SkillTRAN.

Plaintiff argues that the VE's testimony is unreliable because the VE relied on SkillTRAN for job numbers, which Plaintiff contends is not an accepted source of occupational data (Pl. Br. at 12). Plaintiff notes that SkillTRAN is not specifically endorsed by SSA and cites SSR 24-3p and related authority in support (Pl. Br. at 12 n.6). At the same time, Plaintiff acknowledges that the VE testified her opinions were consistent with the DOT (*id*. at 12 (citing Tr. 95)).

This argument fails to demonstrate error. The relevant inquiry under SSR 00-4p is whether the VE's testimony is consistent with the DOT, not whether the VE relied on additional sources in forming her opinions. Here, the VE expressly testified that her testimony was consistent with the DOT, and the ALJ relied on that testimony in making the step five determination (*id*.). Plaintiff

cites no authority that a VE's testimony is unreliable solely because it relies on sources beyond the DOT. Plaintiff also does not identify any conflict between the VE's testimony and the DOT resulting from using SkillTRAN. Without such a showing, Plaintiff's objection to the source of the VE's job numbers does not establish reversible error.

**D. Plaintiff Does Not Establish That the RFC Was Inadequate or That the VE's Testimony Fails to Constitute Substantial Evidence.**

Plaintiff also challenges the adequacy of the RFC. Specifically, Plaintiff contends that because the RFC failed to account for all of his limitations, the hypothetical presented to the VE was incomplete and, as a result, the VE's testimony cannot constitute substantial evidence (Pl. Br. at 13–16). The court addresses Plaintiff's two asserted deficiencies in the RFC: (1) the RFC did not consider all of Plaintiff's limitations, and (2) the limitation to simple, unskilled work does not adequately account for Plaintiff's moderate limitation in concentration, persistence, and pace (*id.* at 15).

> *i.      The ALJ adequately considered Plaintiff's limitations.*

Plaintiff asserts the RFC is not supported by substantial evidence because the ALJ failed to consider numerous limitations, including medication side effects, sleep apnea, suicidal ideation, auditory and visual hallucinations, fatigue from manic episodes and treatment, and other mental health symptoms (Pl. Br. at 13–16 (citing Tr. 72–73, 77, 79, 92, 312, 407, 436, 840, 908, 928, 955, 135-55, 1371, 1376)). Plaintiff also relies on consultative examiner Mark Berkowitz, Psy.D. (Dr. Berkowitz), who found a moderate limitation in concentration, persistence, and pace (*id.* at 13–14). Taken together, Plaintiff argues that if the ALJ had properly considered all impairments and medical evidence, the RFC would include greater limitations regarding concentration, persistence, and pace.

The court addresses this argument in two parts: first, whether the ALJ failed to consider the limitations identified by Plaintiff; and second, whether the ALJ properly evaluated the opinion of Dr. Berkowitz and the resulting moderate limitation in concentration, persistence, and pace.

a.   The ALJ's findings are sufficiently supported by evidence.

The ALJ determined that Plaintiff's limitations regarding concentration, persistence, and pace resulted in the following RFC limitations:

> [Plaintiff can] carry out more than simple but less than complex tasks that can be learned and mastered in up to six months' time or less . . . . At such levels, he can maintain concentration, persistence, and pace throughout a normal workday and workweek, make routine work-related decisions, plan and set goals, adapt to routine workplace changes, travel, and recognize and avoid ordinary workplace hazards.

(Tr. 17). In support of this RFC, the ALJ acknowledged Plaintiff's reported difficulty with concentration and task completion (Tr. 15), but also cited objective medical evidence showing that Plaintiff demonstrated adequate attention and concentration during mental status examinations (*id.*).The ALJ further noted that Plaintiff engaged in activities requiring sustained concentration and persistence, including making beanies during community service, crocheting, performing household chores such as laundry and yardwork, watching television, and playing guitar (*id*. at 15–16).

The ALJ further supported this finding with a detailed discussion of Plaintiff's mental health treatment and objective findings (*id*. at 16–17). The ALJ noted that although Plaintiff experienced psychiatric symptoms and had two psychiatric admissions during the relevant period, these episodes were largely linked to noncompliance with treatment, and his mental functioning improved with adherence to prescribed psychotropic medications (*id.*).The ALJ observed that when compliant with treatment, Plaintiff denied suicidal and homicidal ideation, was cooperative on examination, and showed logical and coherent thought processes, intact memory, adequate

12

attention and concentration, and average intelligence on mental status evaluations (*id*. at 16–17). The ALJ also noted Plaintiff's substance use disorder improved with treatment and remained in sustained remission (*id*. at 17). Finally, the ALJ acknowledged Plaintiff's hearing testimony about auditory and visual hallucinations and recurrent suicidal ideation but noted his mental impairments remained stable with treatment (*id*. at 18).

The court finds no error in the ALJ's evaluation of Plaintiff's functional limitations. While Plaintiff points to evidence that might support greater limitations, the ALJ considered both Plaintiff's subjective complaints and objective medical evidence and determined the limitations in the RFC were supported. The court does not reweigh the evidence or substitute its judgment for the ALJ's when the decision is supported by substantial evidence. *See Hendron*, 767 F.3d at 954.

Accordingly, the court finds no error in the RFC regarding this functional capacity.

b.  The ALJ properly considered Dr. Berkowitz's opinion.

Plaintiff further argues that the ALJ failed to adequately consider the opinion of consultative examiner Dr. Berkowitz, who found that Plaintiff was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Pl. Br. at 14–16 (citing Tr. 105)). Plaintiff appears to assert that this aspect of Dr. Berkowitz's opinion was not properly accounted for in the RFC.

Although the ALJ did not reference Dr. Berkowitz by name, she evaluated the opinions of state agency consulting mental health specialists and found them generally persuasive (Tr. 22 (citing Exhibits B2A; B4A; B6A; B8A)). The ALJ relied on findings that Plaintiff demonstrated adequate attention and concentration, logical thought processes, and improvement in symptoms with treatment, while acknowledging that mood abnormalities could limit cognitive functioning

13

(*id*.). These findings are reflected in the RFC. Accordingly, the court finds no error in the ALJ's evaluation of this opinion.

> ii.    *The RFC accounts for Plaintiff's moderate limitation in concentration, persistence, and pace.*

Plaintiff also argues that even accepting the ALJ's finding of a moderate limitation in concentration, persistence, and pace, the RFC limitation to unskilled work does not account for it (Pl. Br. at 15–16; Pl. Rep. at 7–8). Plaintiff asserts that limiting an individual to simple or unskilled work does not capture moderate limitations in concentration, persistence, and pace because such work still requires sustained concentration (Pl. Rep. at 7–8 (citing SSA POMS DI 25020.010)).

It is unclear whether Plaintiff contends that a limitation to unskilled work can never account for a moderate limitation in concentration, persistence, and pace, or that under this case's facts, it does not. To the extent Plaintiff raises the latter argument, the court has addressed the adequacy of the ALJ's RFC analysis and found no error. The court therefore finds no error in the ALJ's determination regarding simple or unskilled work.

Regarding Plaintiff's broader argument, as indicated by Defendant (Def. Br. at 13–14), multiple Tenth Circuit cases recognize that a limitation to simple or unskilled work can adequately account for moderate limitations by limiting the claimant to particular kinds of work activity. *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) ("[A]n administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity[.]"); *Richards v. Colvin*, 640 F. App'x 786, 790 (10th Cir. 2016) ("But these kinds of restrictions in an RFC—or even a limitation to 'unskilled work'—can adequately account for a claimant's mental impairments, depending on their nature."); *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("[T]he [administrative law judge] accounted for [the claimant's] moderate concentration,

persistence, and pace problems in his [assessment of residual functional capacity] by limiting [the claimant] to unskilled work."))).

In response, Plaintiff notes that *Vigil* recognized there may be circumstances in which a limitation to unskilled work does not adequately address a claimant's mental limitations (Pl. Rep. at 7–8). However, as discussed above, under the facts of this case and based on the ALJ's reasoning, the court finds no error in the determination that the RFC sufficiently accounts for Plaintiff's moderate limitation in concentration, persistence, and pace.

Plaintiff also cites cases from other circuits, noting the Ninth Circuit has held that an RFC limiting a claimant to simple work does not necessarily account for moderate difficulties in concentration, persistence, and pace (Pl. Rep. at 8 (citing *Gartner v. Berryhill*, No. 6:16-cv-01505-SI, 2017 WL 3208351, at *14 (D. Or. July 28, 2017); *Becky B. v. Saul*, No. 6:19-cv-330-SI, 2020 WL 1244865 (D. Or. Mar. 16, 2020))). The court is not persuaded by these authorities and declines to rely on out-of-circuit decisions when the Tenth Circuit has directly addressed the issue.

Accordingly, Plaintiff's argument that the limitation to unskilled work was inadequate is without merit. For the reasons stated above, the court finds no error in the ALJ's RFC determination.

> iii.    *The VE's testimony constituted substantial evidence.*

Lastly, Plaintiff contends that the ALJ's hypothetical questions to the VE did not recite all of Plaintiff's impairments and, therefore, the VE's answers to those questions could not serve as substantial evidence (Pl. Br. at 15–16). Because the court has rejected Plaintiff's challenges to the ALJ's RFC assessment, the court finds that the ALJ presented to the VE a hypothetical question that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the

VE's answer to that question provided a proper basis for the ALJ's decision. *Qualls*, 206 F.3d at 1373 (citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993)).

## IV. CONCLUSION AND ORDER

When viewed in its entirety, the record contains substantial evidence to support the ALJ's finding that Plaintiff was not disabled. Thus, the court concludes that the ALJ's decision in this matter is supported by substantial evidence in the record and that the correct legal standards were applied. Because the ALJ's decision is supported by substantial evidence and legally sound, the Commissioner's decision is AFFIRMED. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296–304 (1993).

DATED this 30 March 2026.

Chief Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah